The final case on the call this morning is number 122059, People v. Theophil Encalado, Agenda Number 3. Counsel, are you ready? And are you? You may proceed. Good morning, and may it please the Court, Counsel, I'm Assistant Attorney General Evan Ellison, representing the people of the State of Illinois in this matter. The right to an impartial jury provides for the removal of minds that are so closed by bias they cannot apply the law to the facts. And guard the error is typically left in the sound discretion of the trial court. In this case, the trial court did all that was necessary to do to remove minds so closed by bias they cannot apply the law to the facts. It adhered to the Zare Principles, codified in Rule 431B, which this Court treats as the standard prophylactic measure to protect against biased jurors, and it created additional reasonable assurances that any prejudice or bias would be discovered when it inquired into each potential juror's ability to be fair, when it repeatedly admonished and paneled jurors of the duty to apply the evidence to the law and to set aside prejudice, sympathy, or bias, and further instructed the jury on that duty again prior to deliberation, and when it instructed jurors about the laws of consent prior to deliberation. Despite no indication that there were any problems with guard the error or any indication of juror bias, the defendant claims that there was an abuse of discretion, that the selection of impartial jury was thwarted, and that he was entitled to a question on prostitution that at best sought to preview his defense and to obtain a more sympathetic jury, and at worst sought to cast improper aspersions about his victim's disputed and ultimately irrelevant prior sexual histories. And it was not improper for the trial court to exercise its discretion and reject a question that it deemed indoctrinating and improper. And the Illinois Appellate Court was incorrect to deem this an abuse of discretion. It's important to remember that there are two fundamental principles of guard the error that we're talking about here. First, that the general rule is to not ask fact-specific questions, and the reason why is because it puts a thumb on the scale in one direction or the other. And the second is that the decision whether or not to ask a fact-specific guard the error question is within the trial court's discretion. So the defendant's position here is that the trial court abused its discretion when it adhered to the general rule. But the defendant's proposed guard the error question would have done everything that a question should not do. It would have indoctrinated the jury, it would have pre-educated jurors regarding his defense, it would have previewed the defendant's final argument, and it ultimately would have usurped the juror's role as the trier of fact. It would have asked the jury to presuppose disputed facts, namely that defendant's victims were prostitutes. And this court has held that even the slightest amount of indoctrination is improper. And so honoring defendant's request likely would have been the use of discretion, not the other way around, because it would have put a thumb on the scale and it would have led the jury toward defendant's defense. That said, the only question here is whether the trial court's refusal to ask the question was an abuse of discretion, whether the refusal to ask the question warranted the selection of an impartial jury. But the trial court's exercise of its discretion chose an option, which was to follow the general rule, to not preview defendant's evidence to the jury, but to reiterate the jury's responsibility at every turn to set aside bias, prejudice, or sympathy, and then let the trier of fact make a determination about which version of events it found to be the most credible was not an abuse of discretion. And ultimately, even if the trial court did err, any error was harmless and likely overwhelming evidence against defendant. Now, defendant's Crawford question was indoctrinating. It told the jury one-size evidence and implied that that evidence was what the case was about. In fact, everybody in this case seemed to recognize that this was an indoctrinating question from the beginning. The trial court recognized it and said repeatedly that it thought that this was a question that indoctrinated the jury a little bit and asked defense counsel how to not indoctrinate them. The state also claimed that it was indoctrinating. And even defense counsel, as the question came out of his mouth, could not help but recognize that it was an indoctrinating question, saying, quote, just put it mildly to not try to indoctrinate them at all. So defense counsel knew that this was going to be an indoctrinating question. And it is an indoctrinating question. If we consider the mindset of a potential juror who has zero knowledge about the case whatsoever, other than the charges themselves, that there are several counts of aggravated criminal sexual assault, and the judge tells the juror prior to trial, this case involves evidence of prostitution, or this case involves evidence of prostitutes, the lens through which the jury is going to view the case is going to change. Now, no matter what evidence is presented henceforth, the juror is going to be thinking, wait a minute, didn't the court tell me at the beginning of trial that this case was about prostitutes? Didn't the court tell me that this was a case about prostitution? And so here, where Y.C., the victim, or C.C., the corroborated witness, gets on the stand and attests to a brutal, aggravated criminal sexual assault, a violent rape, and says nothing regarding any prostitution, nothing regarding a potential transaction of sex in exchange for money or drugs, the jury is left wondering why. What happened here? The judge told me this was a case about prostitution. Why is this person lying and not telling me anything about what the judge said the case was about? So the question inherently was going to lead jurors towards defendant's defense, was going to ask jurors to prejudge the facts, and it was going to imply truth to defendant's version of events before any evidence was ever presented. Now, defendant here is arguing that he needed this question because of the unflattering nature of patronizing prostitutes. But prostitution, or patronizing prostitutes, is not unlike any of the unflattering behavior or conduct about defendants that juries are routinely entrusted with. They're routinely entrusted to consider whether it's relevant to the actual charges. So if we look to the cases like Abram, like Anderson, like Brand, like Dixit, like Morales, that we've cited in our briefing where there were unflattering facts about a defendant, the drug use, prior felony record, prior convictions, that the defendant was a drug dealer, courts have repeatedly determined that it was not in the use of discretion to reject such a question. What defendant is arguing here is that prostitution is different, or patronizing a prostitute is different, that it's different from these cases, that it's a different type of characteristic. But it's not. It simply is an unflattering characteristic that the jury should be entrusted with to determine whether or not it's relevant. So does the case ultimately come down to whether we think prostitution is more like guns and false confessions where we don't question the jurors, or whether it's like abortion and gang membership where questions are allowed? Yes, it ultimately does turn on that. And if that is the case, then how are we supposed to decide how controversial prostitution is or visiting a prostitute would be? Unfortunately, the cases don't indicate what the threshold is of what is so controversial. But what we can determine is that when we look at the quality of the cases where in the very narrow category of cases where it was an abuse of discretion to not ask a question that was requested. That's an extremely narrow scope that we're talking about. We're talking about things that call to mind, or that we know at least fundamentally are not equivalent to the patronization of prostitutes. We're talking about, as Your Honor said, we're talking about abortion. We're talking about interracial crime bias, but only in capital sentences. We're talking about the insanity defense. We're talking about gang bias. We're talking about things that are very, very unique and distinct and that we know this is not akin to. And so there's not a lot of guidance on what constitutes an intense controversy, but what we can recognize is that this just isn't it. There's no widespread bias against patrons of prostitutes. That's progrouped to everybody in the country or everybody in the metropolitan area. There's no, and the nature, and ultimately the nature of the potential bias is different. When we look to gangs, for example, we're looking at a bias that's widespread. There's a belief that these individuals have engaged in a lifestyle of criminality, that their livelihood is based on criminality, that they're violent, that they commit all crimes. And so, therefore, there's a fear that jurors might believe that, there's a fear that jurors might be so prejudiced by gang membership that there would be a presumption that this defendant must have committed this crime or must have done something wrong. There's no analogous presumption or bias against patrons of prostitutes. And, indeed, if we look to defendant's own language at this point, defendant was concerned with appearing unflattering, with appearing sleazy. That's not what a four-year is for. Those concerns are, defendants are routinely, or juries are routinely entrusted to deal with those kinds of concerns without reliance on a four-year question. Ms. Jesmer, in this case, the defendant testified. But what if the defendant didn't testify? So how is that not indoctrination of the jury? How does that not predispose the jury to believe that the victim is a prostitute? That's exactly right, Your Honor. As the dissenting opinion below put it, conditional relevance to the question regarding prostitution. If the question was asked, defendant could then ultimately opt not to act, opt not to testify. And so the damage caused by calling his victims prostitutes in voir dire is done, and then defendant could walk away. Defendants essentially, if we were to allow such a question, defendants could essentially drop this little nugget, this little kernel about the victims, make a, cast an aspersion about their prior sexual history, the type of person that they are, and suggest that maybe it's relevant to the matter at hand, and then ultimately not testify. And the jury is left thinking about that and wondering, and being indoctrinated by it and wondering, well, wait a minute. I thought that there was something about this person being a prostitute, and that is indoctrinating. That's exactly why this question would have been improper. Now, I'd also like to point out for the Court that asking this question, as we've discussed at length in our briefing, is also clearly in violation of, if not the letter, the spirit of the rape shield statute. The rape shield statute exists specifically to avoid implicating a victim's prior sexual history, because it's, first of all, victims shouldn't be harassed and have their prior sexual histories litigated in court, but also because it's ultimately irrelevant to the question of whether consent is provided on the day or the instance in question. And so the reference to a victim's profession as a prostitute or alleged profession as a prostitute is not allowed in evidence. A reference to that same point in voir dire would make the exact same implication about the victim's prior sexual history, and the only difference is that it's occurring in voir dire and not occurring in testimony. And so it's fundamentally, if it's not considered, if it's not a violation of the rape shield statute in letter, which we believe it is because there are violations of the rape shield statute that occur in opening statements and closing arguments, which is technically not evidence, we would at least argue that it's a violation of the rape shield statute in spirit, that it accomplishes the exact same thing that's prohibited in evidence, but it accomplishes it in voir dire. And in fact, trial counsel acknowledged three times prior to asking for this question in voir dire about prostitution that general obligations regarding the prior sexual activity of defendant's victims were not going to be allowed. Three times he reiterated that point. Counsel reiterated that point. The court asked counsel, you may allege consent, are you going to try to produce any other prior sexual activity of the victims? Counsel, on other days, no. The court says, you're not going to go into any other prior sexual conduct on these alleged victims. Counsel responded, correct. I plan to follow the law, and that's what the law is. The court says, okay, you're not going to offer any prior conduct. Counsel responds, no. And so counsel knew that this type of evidence, or that this type of aspersion about the profession of prostitution is not allowed in evidence, and yet was going to make the exact same implication in voir dire. And so it would ultimately defang or declaw the Grimschild statute if the policy that we're pushing in the body of evidence couldn't also be pushed in voir dire as well. And we would additionally just point out that even if there was any error here, which we, as a group, stated, we do not believe that there was any error by the trial court when it rejected this question, that any error would be harmless in light of the overwhelming evidence against the defendant. Unless there are any further questions, we would ask that this court overturn the appellate court and affirm the conviction. Thank you, counsel. Good morning, Your Honors, and may it please the court. I'm Jennifer Bontrager from the State Appellate Defender for Appalief, UofL, and Colado. I'd like to start by bringing Your Honors back to the fact that this case is just about a single question, a single neutral question that the defense sought to have the judge pose to the panel of potential jurors. That question was, you will hear evidence about prostitution. Would that fact alone prevent you from being fair to either side? This was a carefully crafted question phrased neutrally, addressing a factual issue that was going to be integral to the case, and it was designed to ferret out prejudices and biases that otherwise would not have been discovered through the standard voir dire questions. Credibility was the determinative question in the case, and it's important to note that at the time of voir dire and at the time of opening statement, the state itself was planning to call another other crimes witness that it had successfully sought to call pretrial. That witness, S.A., her proposed testimony was going to be that she was, in fact, working as a prostitute on the day in question when she engaged in a consensual sexual encounter. What began as a consensual sexual encounter, a prostitution encounter with Mr. Ancolato, it later went badly and turned into, as she alleged, a sexual assault. So this was relevant to both sides from the get-go, and the state seems to have abandoned its own evidence there, and the concept that the jury agrees to view the evidence fairly. Even if, as the state contends, if it's true that the proposed question, simply stating that they would hear evidence of prostitution, which again the state itself initially at least was going to be presenting as well, would have caused potential jurors to view Y.C. and C.C., S.A., negatively or to assume certain negative characteristics about them, it would seem that the state would want to know that and excuse those jurors or ask for an instruction to clarify that prostitution refers only to a singular transaction. The proposed question here presupposed no details, presupposed no evidence. It was simply, presupposed no bias. It simply asked, would hearing evidence about prostitution, about a single encounter, a single transaction, would that bias you, would that fact alone, prevent you from being fair to either side? Does that create any tension with the rape shield law? Not at all. The rape shield statute, that argument is a red herring. The rape shield statute applies to evidence. A question asked in Vordier is not evidence. In particular, also the question here was very neutrally phrased. It did not say that the evidence would be coming from one party or the other. It did not invite jurors to speculate. If a juror thought something negatively about prostitution, if a juror was going to assume certain things about a sexual history, then that needed to be corrected, and Vordier is the very time to correct that before the jury is sworn and agrees to view evidence dispassionately. That's exactly what this question could have ferreted out if a juror was going to make certain assumptions. The question itself presupposes nothing, and nothing was brought out about anyone's sexual history, other than Mr. Infilatos, who himself testified to his habit at the time of engaging the services of prostitutes. But there's nothing about the victims, the complainants, nothing about YC, nothing about CC. No questions were even asked by defense counsel on cross about whether they were engaging in prostitution at the time. He simply sought to poke at their credibility in other ways. It was Infilatos' testimony that detailed his version of the events in which he claimed these were consensual sexual encounters that he paid for and then ultimately got frustrated about, took his money back, and moved on. But the question itself, again, presupposes nothing, and it's not evidence, so rape shield can't fire. The state itself in its brief concede that Infilatos was allowed to testify that he was engaging the services of prostitutes. Defense counsel did not dance anywhere near the line that rape shield is aimed at. I asked your opponent, and I'd like to ask you, does this case ultimately depend upon whether we think it's more like guns and false confessions or whether we think it's more like abortion and gang membership? Absolutely, it does, Your Honor. And, I mean, this court's... And then how do we make that assessment? Well, the standard is not extraordinary controversy. That's only been applied in legal defenses where, like, insanity or false confessions. But extra questions are perfectly appropriate when the facts involve an area where there's particularly fertile field for preconceived notions and prejudices. That's certainly prostitution. This court has allowed questions on drug use and addiction, pervasive drug use and addiction, abortion, interracial relationships, again, when it's something that's integral to the case itself, circumstantial evidence alone, and most recently in Reinhart, delayed reporting of sexual assaults. In fact, this court just a couple of years ago endorsed much more detailed and invasive questions on the delayed reporting of sexual assaults compared to the singular question, the singular neutral question, that was proposed in this case. And there's plenty of evidence that jurors could have myriad attitudes on prostitution from, much like gangs, finding the whole idea, everybody involved is immoral and I can't believe anyone from that, to the other far end of the spectrum feeling that women who work as prostitutes are empowered feminists who are using, you know, what they've got to make money. And everything in between that, you know,  it was a case involving adult entertainment zoning. Your Honors acknowledged that the parties were very concerned about negative secondary effects of adult entertainment, which included prostitution, gamblings, and drugs, and were concerned about things degrading a neighborhood. The tide is also turning, though, when it comes to prostitution. This is something that's constantly discussed as whether it should even be illegal. A lot of European countries have turned to prosecuting for a transitory period, prosecuting clients, and not making the women themselves who are being sex workers, not criminalizing their conduct, only criminalizing the conduct of the clients. This is a question in my mind. The concern about bias, is it bias about the women, or is it bias about the defendant's, prejudice towards the defendant and his defense he was going to raise? What is the concern here that this question was trying to deal with? Well, the concern, it's actually both of those. It's concern that the, because, again, evidence was going to, at the time of Wardeer, the parties, the judge and defense counsel, at the very least, were expecting that both sides would present testimony detailing an act of prostitution with the state's other crimes witness and Mr. Ancolato's own testimony. So ferreting out bias on both sides was the point of the question. It wasn't simply to look for jurors who would be very upset about a man who's engaging the services of prostitutes and engaging in criminal activity on a regular basis. But it's also, as the state's position, if jurors were automatically going to view their witnesses negatively, surely they wanted to know that, too. But aren't we looking at this case, of course, from the defendant's point of view? How is he prejudiced? And that's my concern is, isn't that the focus that we should be looking at? Without this instruction, did the defendant have a fair trial? That's how we should be focusing, correct? And the defendant? Sure. I mean, I'll still maintain that this would have ferreted out bias on both sides. But, yes, the question is whether the judge trials his discretion in refusing to ask this question. And the appellate court, I think, was exactly right. Following the long line of cases from Murawski in the 60s through Clark and through Strain and through Faulkner and through, most recently, Reinhart. You know, we're talking about a pervasive factual issue involving a subject that we know carries strong opinions and prejudices. And they're not all, you know, it's not just one attitude. It's not just one prejudice that we're talking about. So absolutely not, we don't know if what prejudices ended up on the jury because the judge refused this question. And we can't then assume that the trial was fair if we don't know what prejudices ended up on the jury because this question was refused. Following up on Justice Tice's question, then are we being called upon to determine whether the bias or the negative effect, since only the defendant is requesting the question, affects the defendant more than it affects the victim, the prostitute, in this case? Isn't that what we're being asked to do? And you talked about the changing attitudes in your brief, but wouldn't it, for the defendant to be prejudiced here, we would have to be making a determination that the question is designed to ferret out people who think the defendant using the services of prostitutes is innately worse than the prostitute. I don't think you're going to have to find that. I think just finding that that bias exists that the jurors could have, looking at what Your Honor was referring to in the briefs about the turning tide, the focus now, both by law enforcement and on social media, to shame largely men who engage the services of prostitutes. The fact that that, I mean, you don't have to find that that bias might have been more prevalent than not. The fact remains that that bias might have been there and that could have, that likely deprived Encolado of a fair trial. I don't think you have to weigh on which side it would have been more prejudicial. It would have, I mean, I think it was prejudicial to both sides, not to ask the question, but it certainly prejudiced Mr. Encolado because he wasn't able to ferret out the prejudices held by those jurors who might have immediately decided to view him as this sleazy reprobate who's going around the neighborhood engaging the services of prostitutes, which he owned up to and described in his own testimony. He was really putting himself out there. And the fact that we don't know what the jurors thought about that absolutely deprived him of a fair trial. If Your Honors have no other questions, I'd say that this Court's decisions from Muravsky to Strain and to Reinhart just a few years ago compelled the same conclusion the appellate court came to in this case. The judge abused his discretion in refusing to pose a neutral question on an issue known to carry strong biases and prejudices. And again, we're not asking for much. It's one question. It wouldn't take much time. And it would do, it would be a small thing to do to ensure a fair trial. Can I ask one question? I'm sorry. What if the question was asked and he chose not to testify? But the State argues that then the entire case would be sort of flipped on its head, that the State's argument is that this was, there was no consent here. And yet the jury had been instructed. I mean, well, the jury wouldn't have been instructed. There simply would have been the question posed. It's a neutral question. You're going to hear evidence of prostitution. But then they wouldn't hear any evidence of prostitution. Unlike some of these cases, and I'm trying to kind of sort these out, some of these cases the State is going to be introducing testimony like gang membership that might be prejudicial to the defendant. So the defendant wants to head that off before the State introduces that kind of evidence. And I think most of the cases come out that way, that it's the State presenting the damaging evidence. Here, this is only going to come from the defendant. But it wouldn't have. At the time of opening statements, we still thought that the State was going to call S.A., and she was going to testify that she was working as a prostitute when she engaged, when Encolado engaged her services as a prostitute, that money was exchanged for certain sexual acts, but that it then later turned into a criminal sexual assault. Now, they ultimately didn't call her until sentencing. But at the time, the evidence was going to come from both sides. And, you know, we also have to credit defense counsel, who was doing this. He had a good faith basis for doing this. He was going to call his client to testify. We're not talking about injecting this into cases where it would be utterly irrelevant. This was the crux of the case. The defendant absolutely had to testify in order for this defense to make any sense. And to ensure a fair trial, asking a single neutral question, it's simply not too much to ask. If there's nothing else, Your Honor, I should affirm the appellate court. Thank you. Thank you. Reply. Very briefly, Your Honor, just a couple of points that I wanted to point out. With regard to the defendant's claim that this was a neutral question, so, therefore, there's no problem here. The state's position is that this is an inherently non-neutral question, even if it was phrased neutrally, because it focuses explicitly on defendant's defense, and it presupposes facts regarding defendant's testimony. And as to the defendant's claim that it, repeated claim, that this would have benefited both sides, that this would have benefited the victims in this case, that argument is fundamentally a red herring, because it doesn't matter whether it would have helped the victims. What we're talking about here is the abuse of discretion standard. And the abuse of discretion standard asks whether the defendant's right to an impartial jury was thwarted, not whether it would have benefited the victims to ask this question, but whether defendant's rights were thwarted. And, ultimately, they were not thwarted by the refusal to ask this question. So it doesn't matter whether it would have benefited the victim in this case. And with regard to the defendant's claim that the rape shield statute doesn't prohibit this type of testimony, so the question itself was fine. The rape shield statute is very, very narrow in what it allows a defendant to do with regard to a victim's prior sexual history. A defendant, and this court called this People v. Sandoval, and then it was later codified in the rape shield statute under the Exception B. The defendant is allowed to present his defense, and a defendant is allowed to confront witnesses. But a defendant is not allowed to do more than that. He's not allowed to call his victims prostitutes as a profession, to refer to their overall profession as prostitutes, even in evidence. What a defendant is allowed to do is state his defense. And so if his defense is, in this particular case, there was a transaction, it was consensual because there was a transaction of sex in exchange for money, that's allowed. But simply saying these women were prostitutes is not allowed in evidence, and it certainly shouldn't be allowed in court here either. Does the opposing counsel bring up, when she brings up that S.A. at the time, the defense thought that S.A. was going to testify and therefore would mention in their opening statement that they were going to hear evidence of prostitution, does that do away with your predisposition position? Well, ultimately, what the defendant is arguing there is that this would have benefited the state because it would have helped with regard to S.A.'s testimony. And again, as I've stated, it doesn't matter whether it would have benefited the state because it would have helped with regard to S.A.'s testimony. What we're dealing with is the abuse of discretion standard. Yeah, I see that. I mean, it might ultimately come to abuse of discretion, but I think that part of it sounds like part of your argument is that by asking the question of prostitution that really is the defense part of the case to make it consensual, those factual type questions would be asked that would be predisposing the jury. And my question goes to, and then if the question wasn't asked, presumably the jury wouldn't be predisposed as to the issue of prostitution may be entering the case. An opposing counsel in response to Justice Tice's question said, well, they were going to hear about prostitution whether it came in Bordier or not because we thought S.A. was going to testify and S.A. was going to testify as to prostitution. So does that at least take away the predisposition argument? What it points to, Your Honor, is the reason why the overall rule, the general rule of avoiding fact-specific questions exists. And that is because a fact-specific question depends, is conditionally relevant on whether a witness is called, whether it's defendant testifying or whether it's S.A. testifying. And so the general rule is to not ask those types of questions, to let the evidence unfold as it does, and to entrust the jury, which we presume that the jury is able to apply the law to the facts. And we entrust them to make a determination about what version of events is the most credible. And there's a risk when we start engaging in this analysis of, well, the state's case is going to include this type of fact or the defense's case is going to include that type of fact, so we should start asking questions about all of these facts beforehand. Then we're risking creating presupposing facts in Bordier before they're ever actually presented and then not actually even requiring them to be presented. The case is going to unfold as it will, and this is why this rule exists, that we're not supposed to start, or one of the reasons why the rule exists, that we're not supposed to start engaging enough in the discussion of the facts in Bordier. The purpose of Bordier is ultimately to remove lines that are so closed by bias that they can't apply the law to the facts, not to start previewing either side's case to the jury. Now, with regard to the defendant's other argument regarding the changing attitudes towards prostitution, I think this ultimately is going to, that there's more liberal attitudes towards prostitution overall. This ultimately cuts against their argument that this is such an extremely controversial topic that they require, that the defendant required a Bordier question, that it was an abuse of discretion for him to not get that Bordier question. The defendant can't simultaneously argue that society as a whole has more liberal attitudes towards prostitution while also arguing that this is an extremely controversial topic that required a Bordier question and such that it was an abuse of discretion to not ask the question. And it's also important to recognize that the prejudices against the defendant that he's worried about don't concern minds so closed by bias, so blinded that they can't ultimately, that jurors can't ultimately set aside their opinions and apply the law to the evidence. Jurors don't need to be blank slates. They only need to be able to set aside their bias. And what defendant is talking about here is just a worry that jurors were going to think that he was, that his defense was unflattering, that he was sleazy. This isn't a question. That's not the type of concern that we're worried about when we talk about minds so closed by bias that they can't apply the law to the facts and set aside sympathy, prejudice, or bias. So unless there are any further questions, we would ask that this Court overrule the lower court and affirm the conviction. Thank you. Case number 122059, People v. Incolato, will be taken under advisement as agenda number three. Mr. Ellsner, Ms. Bontrager, we thank you for your arguments today. You are excused.